## LUCCHESI v. WEEDIN.* ·
### No. 6523.

Circuit Court of Appeals, Ninth Circuit. Nov. 21, 1932.

L. F. Buty, John J. Sullivan, and Michael F. Ward, all of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This appeal is prosecuted from an order denying appellant's petition for a writ of habeas corpus. Appellant, an alien, was arrested on October 18, 1928, on a charge of running a house of prostitution, known as the Palmer Hotel, in the City of Tacoma, Wash. In December, 1929, after hearings

*Rehearing denied January 9, 1933.

before immigrant inspectors and before the Department of Labor, appellant was ordered deported on the ground that he had been found in the United States in violation of the Immigration Act of 1917, § 19 (8 USCA § 155), in that he had been found managing a house of prostitution.

It appears that appellant had lived at the hotel since 1923 or 1924. In February, 1925, he obtained a lease of the premises and operated the hotel. In May, 1925, he hired one Loie Tucker to manage the hotel for him while he made a trip to Italy. In September, 1925, a few weeks after his return from Italy, he married Loie Tucker and they continued to reside at and operate the hotel until July, 1926, when they vacated the premises. In September, 1926, appellant's wife (Loie Tucker) obtained a lease of the hotel in her own name and operated it until June, 1928. During this period she and her husband were living at the hotel. In June, 1928, appellant and his wife became estranged and she moved to Aberdeen, Wash., and appellant continued to reside at the hotel. Prior to her departure, according to the testimony, the wife placed one Pheme Novak in charge of the hotel, and requested appellant to endeavor to sell her leasehold interest for her. For about two years prior to his arrest, appellant had operated a cigar stand in South Tacoma, a few miles from the hotel. According to appellant's testimony, Pheme Novak had charge of the premises after June, 1928, and appellant had no voice in the management thereof, but simply continued to occupy his room there. After his arrest, appellant's wife, Loie Tucker, obtained an annullment of their marriage, which was bigamous because he had a wife living in Italy.

It is well settled in these cases that, if the evidence upon which the order of deportation was based is sufficient to support the findings made, and a fair hearing was had, the findings of the department are not subject to review by the courts. Zakonaite v. Wolf, 226 U. S. 272, 274, 275, 33 S. Ct. 31, 57 L. Ed. 218.

Appellant contends that there is no evidence to show that the hotel in question was a house of prostitution, and that there is no evidence to connect him as manager of the place, especially in view of the fact that it was under lease to Loie Tucker.

The testimony of the several witnesses clearly shows that the hotel had for some time borne a questionable name. Concerning its reputation, Loie Tucker testified by deposition as follows:

"Q. The Palmer Hotel is known as a sporting house, isn't it? A. No, not exactly.

"Q. Isn't it a matter of fact the Palmer Hotel is or has been known as a sporting house? A. Yes, there were other people that had it before I had it.

"Q. And while you were managing the Palmer Hotel it was known as a sporting house? A. Not altogether; but it has had that reputation, yes.

"Q. There were girls living at the Palmer Hotel for the purpose of prostitution? A. There were girls there when I was there, but that was their own business."

Two immigration inspectors visited the hotel on October 4, 1928, and their testimony tended to prove that it was operated as a place of prostitution.

A witness named Helen, an admitted prostitute, testified that she had lived at the place for about a week during the fore part of October, 1928, and practiced prostitution while there, with the consent of Pheme Novak, but without the knowledge or consent of appellant.

There was ample evidence to sustain the finding that the hotel was known and operated as a house of prostitution.

There was also evidence, both direct and circumstantial, tending to connect appellant as manager of the place. The testimony of the immigrant inspectors is to the effect that on October 4, 1928, they called at the hotel and represented themselves as prospective purchasers to Pheme Novak, who called appellant, and he told them that he had a lease and would sell for $2,500. We quote the following from the testimony of one of the inspectors:

"I went to that hotel accompanied by Inspector Yeager. Inspector Yeager represented to the girl he met that we were from Seattle, that he was a real estate dealer and that I wanted to see about buying the place. He represented me as a possible purchaser for the place. We saw the girl they call Pheme and then she called Mr. Lucchesi. Her exact words were, 'Here is a couple of guys from Seattle who want to buy the place.' We talked to Mr. Lucchesi, told him we understood the place was for sale. He said yes, that he was the owner and he would sell for $2,500. We asked if he had a lease. He said yes, he had. As I recall it he said the lease ran for three years, the rental during the first year was $90 a month and a larger sum each succeeding year. Mr. Yeager asked him how many girls they had there. He said he

didn't have any at the present time, but see his manager, Pheme. He called Pheme, and she showed us over the place and mentioned that she didn't have any girls there at the present time.

"Q. At all times during your conversation with Lucchesi, did Lucchesi represent himself to you as the owner or proprietor of that place? A. He did. * * * We asked him in the beginning if he was the owner of the place. He said yes, he had this lease."

Appellant was accorded a fair hearing, and we cannot say that the finding as to his connection with the place is arbitrary or without substantial support.

The judgment is affirmed.